# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Northern Division*

| | |
|---|---|
| Patrick J. Kelly | ) |
| | ) |
|     1909 Orchard Point Road | ) |
|     Pasadena, MD 21122 | ) |
| | ) |
|     ***Plaintiff*** | ) |
| | ) |
| vs. | )    Civil Action No.: |
| | ) |
| Carrie M. Ward | ) |
| Howard N. Bierman | ) |
| Jacob Geesing | ) |
| Pratima Lele | ) |
| Joshua Coleman | ) |
| Richard R. Goldsmith, Jr. | ) |
| Ludeen McCartney-Green | ) |
| Jason Kutcher | ) |
| Nicholas Derdock | ) |
| Elizabeth C. Jones | ) |
| As substitute trustees under a deed of trust | ) |
| | ) |
|     Serve all at: | ) |
|     BWW Law Group, LLC | ) |
|     6003 Executive Blvd. Suite 101 | ) |
|     Rockville, MD 20852 | ) |
| | ) |
| Ocwen Loan Servicing, LLC | ) |
| | ) |
|     CSC Lawyers Incorporating | ) |
|     Service Company | ) |
|     7 St. Paul Street Suite 820 | ) |
|     Baltimore, MD 21202 | ) |
| | ) |

IndyMac Mortgage Services          )
OneWest Bank, NA              )
                                  )
      Terry Laughlin, CEO      )
      888 E. Walnut Street     )
      Pasadena, CA 91101     )
                                  )
Deutsche Bank National Trust Company,  )
as trustee for Residential Asset     )
Securitization Trust 2007-A9      )
Mortgage Pass-Through Certificates  )
Series 2007-I                )
                                  )
      300 South Grand Avenue   )
      41st Floor               )
      Los Angeles, CA 90071    )
                                  )
       ***Defendants***        )
                                  )

## COMPLAINT FOR DECLARATORY JUDGMENT

     Patrick J. Kelly, by undersigned counsel, requests a declaratory judgment pursuant to 28 USC §2201(a) that he effectively rescinded a loan utilized to refinance his residence, where the lender acquired a security interest in that residence.

     1.  This action arises under a federal statute, 15 USC § 1601, et seq., the Truth in Lending Act ("TILA").

     2.  Venue is proper in this court because plaintiff is a resident of Maryland, the defendants conduct business in the State of Maryland, and the real property at issue is located in the State of Maryland.

### *Parties*

     3.  Plaintiff Patrick J. Kelly ("Mr. Kelly") is the owner of the real property known as 1909 Orchard Point Road, Pasadena, Maryland (the "Property"), which is allegedly encumbered by a

deed of trust that was rescinded by Mr. Kelly pursuant to the Truth in Lending Act.

      4.  Defendants Carrie M. Ward, Howard N. Bierman, Jacob Geesing, Pratima Lele, Joshua Coleman, Richard R. Goldsmith, Jr., Ludeen McCartney-Green, Jason Kutcher, Nicholas Derdock, and Elizabeth C. Jones, are substitute trustees (the "Substitute Trustees") under a deed of trust recorded in the land records of Anne Arundel County, Maryland, encumbering the Property.  A foreclosure proceeding is pending in the Circuit Court for Anne Arundel County, Maryland, brought by the Substitute Trustees (case number C-02-CV-15-001770), who have scheduled a foreclosure sale of the Property for January 10, 2017.  The Substitute Trustees are acting under the authority of a promissory note and deed of trust which plaintiff has rescinded.

      5.  Defendant IndyMac Mortgage Services ("IndyMac Mortgage") is a wholly-owned subsidiary of defendant OneWest Bank, NA.  IndyMac Mortgage's predecessor, IndyMac Bank, was the original lender and was subsequently acquired by OneWest Bank, NA.  OneWest Bank, NA, has apparently sold the note rescinded by Mr. Kelly to defendant Deutsche Bank National Trust Company, as trustee for a securitized mortgage pool known as  Residential Asset Securitization Trust 2007-A9 Mortgage Pass-Through Certificates Series 2007-I.  Defendant Ocwen Loan Servicing, LLC, services the loan in question for Deutsche Bank National Trust Company.

      6.  One of the defendants is the "holder" of the rescinded note.  The owner of the obligation alleged to have been rescinded is Deutsche Bank National Trust Company, as trustee of the securitization trust.

### *Background Facts*

      7.  On June 27, 2005, Mr. Kelly and his wife, Andrea Kelly, purchased the Property for

the sum of $925,000.  The purchase was financed with a promissory note secured by a deed of

trust, and the Property was intended to be used, and was used, as the principal residence of Mr.

and Mrs. Kelly.

8.   In 2007, Mr. And Mrs. Kelly separated with the intent to end their marriage.  On or

about April 1, 2007, Mr. And Mrs. Kelly executed a marital settlement agreement, the most

important provision of which, for the purposes this action, was that Mrs. Kelly conveyed her

entire interest in the Property to Mr. Kelly, who continued to live at the Property, and was

obliged by the agreement to refinance the Property so as to eliminate any liability for Mrs. Kelly.

9.   To refinance the debt secured by the Property, Mr. Kelly obtained the assistance of

National Capital Title & Escrow, LLC ("National Capital Title").  National Capital Title

arranged a loan in the amount of $1,066,500.00.  Plaintiff believes the loan was funded by

IndyMac Bank, because the loan was assigned to IndyMac Bank on the same day as the closing

with Mr. Kelly, June 20, 2007.

10.   The closing documents failed to comply with the federal Truth in Lending Act, 15

USC § 1601, et seq.  The specific deficiencies are set forth below, in paragraphs 32 - 38 below.

11.   By October 2007, Mr. Kelly had contacted IndyMac Bank to request a loan

modification.  The reasons for Mr. Kelly's request included the onset of problems in the

economy as a whole; the implosion of Mr. Kelly's profession in particular (he was a real estate

developer); and the discovery that his home was probably not worth the $1.5 million represented

in the appraisal provided by IndyMac Bank.  Mr. Kelly employed a Florida-licensed attorney,

Brian Korte, to represent him in connection with the request for mortgage assistance.

Specifically, Mr. Kelly requested that he be permitted to suspend his monthly mortgage payments

while he resolved his financial problems.  Mr. Kelly stated he was willing to pay the real estate

taxes and insurance during any time of suspended payments.

12.   On or about December 4, 2007, IndyMac Bank responded to Mr. Kelly's request for

mortgage modification.  In its letter, IndyMac Bank acknowledged that Mr. Kelly was requesting

mortgage assistance due to his financial hardship, and agreed to forebear from foreclosure until

April 2008, provided Mr. Kelly met various conditions.

13.   Mr. Kelly (by his attorney, Mr. Korte) accepted the terms of IndyMac Bank's offer by

letter dated January 7, 2008.  Mr. Kelly complied with the IndyMac Bank terms, but IndyMac

Bank announced in March that Mr. Kelly was delinquent and that a foreclosure would occur in

April if he did not cure his default by payment of the sum of $23,093.18, as well as any

additional monthly payments, late charges and fees accruing before the payment was made.  If

Mr. Kelly failed to cure the default in full, IndyMac Bank would accelerate his mortgage and

initiate foreclosure proceedings.  This was not the agreement Mr. Kelly thought he had made

with IndyMac Bank.  Although Mr. Kelly did not know this at the time, Indy Mac Bank was

apparently having difficulty with the Federal Deposit Insurance Corporation ("FDIC").

14.   IndyMac Bank refused to engage in any further discussions with Mr. Kelly or Mr.

Korte.  Consequently, Mr. Kelly informed IndyMac Bank (using the Austin, Texas address that

appeared on his statements), by letter dated June 10, 2008, that he was exercising his right of

rescission pursuant to the Federal Truth in Lending Act

15.   IndyMac Bank did not respond to Mr. Kelly's rescission as provided by TILA within

the time prescribed by the statute.

16.   Noting the failure of IndyMac Bank to respond to his rescission, Mr. Kelly sent a

second notice of the exercise of his right of rescission to IndyMac Bank (using the Kalamazoo, Michigan address appearing on his statements) on July 20, 2008.  Mr. Kelly knows that IndyMac Bank received both letters, because in the course of a subsequent foreclosure proceeding, eventually voluntarily dismissed by its substitute trustees, the attorney for those substitute trustees produced the rescission letters and asked Mr. Kelly questions about them.  IndyMac Bank again failed to respond to the letter.

17.   On July 11, 2008, IndyMac Bank was placed in conservatorship by the Federal Deposit Insurance Corporation ("FDIC").  A bridge bank, IndyMac Federal Bank, FSB, was created to assume control of IndyMac's former assets; the bridge bank was itself under the control of the FDIC.  On March 19, 2009, the FDIC completed the sale of IndyMac Federal Bank, FSB, to OneWest Bank, FSB ("OneWest"), at a significant discount to the face value of the assets.  OneWest was thus knowingly acquiring assets which were non-performing, in default, or at least at significant risk of default.

18.   It appears that OneWest then sold the rescinded note to defendant Deutsche Bank National Trust Company, as trustee for a securitized mortgage pool known as Residential Asset Securitization Trust 2007-A9 Mortgage Pass-Through Certificates Series 2007-I.  The rescinded note was serviced by defendant Ocwen Loan Servicing, LLC.

19.   Eventually, a foreclosure sale was scheduled with respect to the Property.  Mr. Kelly filed a voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code on August 11, 2015.  On his bankruptcy schedules, Mr. Kelly stated that the indebtedness with respect to OneWest was "disputed,."  The reason for the dispute was Mr. Kelly's recession of the loan in question.

20.   A motion for relief from stay with respect to 1909 Orchard Point Road was filed on September 2, 2015, on behalf of Ocwen Loan Servicing, LLC, "as servicer for Deutsche Bank National Trust Company as Trustee for Residential Asset Securitization Trust 2007-A9 Mortgage Pass-Through Certificates Series 2007-I."

21.   Mr. Kelly filed a *pro se* adversary proceeding against Ocwen, OneWest and Deutsche Bank on November 16, 2015, requesting a declaratory judgment to the effect that he had rescinded the loan in 2008.  The defendants filed a motion to dismiss, and the motion to lift stay was withdrawn on November 20, 2016.  At a hearing concerning the adversary proceeding, the bankruptcy judge expressed doubt that he had jurisdiction to decide the adversary proceeding, which was grounded on the violation of a federal statute unconnected with bankruptcy. A motion to withdraw the reference to the bankruptcy court with regard to the adversary proceeding was filed by undersigned counsel.  That motion was granted by the district court, and the case was removed to the United States District Court for the District of Maryland and assigned to Judge Russell (case number 1:16-cv-01049-GLR).

22.   Judge Russell ultimately granted the motion to dismiss the complaint on the grounds that Mr. Kelly had failed to allege the factual basis for his rescission of the loan, which had occurred outside of the three-day window in which a loan subject to TILA may be rescinded for any reason.  Mr. Kelly had not alleged any of the TILA violations which are grounds for rescission up to three years after the loan is consummated.  The dismissal was *without prejudice*.

23.   The final decree in the bankruptcy case was entered, and the case was closed, on September 19, 2016.  The Chapter 7 Trustee's Report of No Distribution was filed on October 26, 2015, and showed "Assets Abandoned" in the amount of $684,335 "without deducting any

secured claims." This amount is largely, if not solely, comprised of the value of the Property, which was expressly abandoned by the trustee with knowledge of the claim as "disputed." Therefore, Mr. Kelly's claim that the promissory note and deed of trust encumbering the property have been rescinded is a claim which belongs to him, rather than his Chapter 7 trustee.

### *Plaintiff's Standing to Bring this Action*

24.  This action is a claim for declaratory relief only; plaintiff has no claim for a money judgment or other affirmative relief.

25.  Plaintiff is threatened with the loss of his residence if the pending foreclosure sale action results in the ratification of a sale.  This is an economic injury, an invasion of a legally protected interest because economic interests are legally protected interests.  Plaintiff's statutory right to rescind a loan secured by his residence is being violated.

26.  The economic injury is concrete and particularized; it is the loss of his residence.

27.  The economic injury is actual and immanent, and not conjectural or hypothetical. There is a foreclosure sale scheduled with respect to plaintiff's residence.  Even if it is canceled, the intention of the Substitute Trustees is plain.

28.  There is a causal relation between the injury (the foreclosure sale) and the conduct complained of (the refusal of the defendants to respect Mr. Kelly's rescission of the loan in question).

29.  Plaintiff's injury would be redressed by a favorable decision to the effect that he did successfully rescind the loan in question, and that the promissory note and accompanying security interest under a deed of trust cannot be enforced because they were rescinded.

30.  Thus, plaintiff's injury is sufficiently likely, concrete, and immanent to satisfy the

constitutional requirement that he bring a "case or controversy" before the court.

31.  Plaintiff has no adequate remedy under the Maryland foreclosure law.  In the foreclosure proceeding, plaintiff is not guaranteed discovery or a hearing concerning his TILA complaint.  This is a federal question, and not an issue of fraud by the alleged holder of the promissory note, and thus not a complaint that the Circuit Court for Anne Arundel county would be prepared to deal with as a defense to a mortgage foreclosure.

### *Violations of the Truth in Lending Act*

32.  As is set forth immediately below, National Capital Title and IndyMac Bank violated the TILA.  On the basis of these violations, Mr. Kelly was entitled to rescind the loan transaction within three years of the closing.  Mr. Kelly did so, by giving written notice of the rescission on two separate occasions. Mr. Kelly was not obligated to tender any funds to any of the defendants at the time of the rescission, and he did not do so.  The rescission was effective upon the mailing of the letters.

33.  TILA was violated when National Capital Title failed to accurately disclose to Mr. Kelly the finance charges, the amount financed, and the Annual Percentage Rate ("APR").  There is a substantial difference between the APR in the initial TILA disclosure to Mr. Kelly by National Capital Title and the final TILA disclosure.

34.  The truth in Lending Disclosure Statement shows the Finance Charge as $1,975,001.77, which is understated by more than $100.00.

35.  The amount financed as set forth on Line 202 of the HUD-1 is not accurately reflected in the Amount Financed as stated on the Truth in Lending Disclosure Statement.  This amounts to an inaccurate statement of the finance charges under 15 USC § 1605(f)(2)(A), which

constitutes the failure to make a material disclosure as defined by 15 USC § 1601(u), and is a violation of TILA.

36.  The combination of understated finance charges and overstated amount financed leads to an understatement of the APR in excess of 1/8 of 1percent, which is a violation of 15 USC § 1606(c).

37.  National Capital Title violated TILA by not including the Uniform Residential Loan Applications ("1003)" in the closing package.  Failure to include the 1003 in the closing package makes it impossible for Mr. Kelly to know if he received the annual percentage interest rate and terms he requested.

38.  Any of the forgoing violations entitles Mr. Kelly to rescind the loan transaction for a period of up to three years after closing.  15 USC § 1635(1); 12 CFR § 226.23(a)(3).  Mr. Kelly rescinded the transaction.  Rescission is a complete defense to the pending foreclosure action.

WHEREFORE, plaintiff Patrick J. Kelly requests that this court issue a declaratory judgment that he rescinded the loan transaction in questionk and that the promissory note and deed of trust associated with that transaction are unenforceable.

/s/ Paul F. Newhouse
Federal Bar No.: 01119
4901 Roland Avenue
Baltimore, MD 21210
paul.newhouse@towsonlaw.com
410-296-8565
443-845-0688