UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| PATRICK J. KELLY, *et al.*, | : |
| Plaintiff, | : |
| v. | : Case No. 1:17-cv-00039-MJG |
| CARRIE M. WARD *et al.*, | : |
| Defendants. | : |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants IndyMac Mortgage Services, a wholly-owned division of OneWest Bank, N.A. ("IndyMac Mortgage Services"), Ocwen Loan Servicing, LLC ("Ocwen"), OneWest Bank, N.A. ("OneWest"), and Deutsche Bank National Trust Company, as Trustee for Residential Asset Securitization Trust 2007-A9, Mortgage Pass Through Certificates Series 2007-1 ("Deutsche Bank") (collectively, the "Defendants"), by counsel, file this Memorandum of Points and Authorities in Support of their Motion to Dismiss the Complaint filed by the plaintiff, Patrick J. Kelly ("Plaintiff"), and state as follows:

**I.  PRELIMINARY STATEMENT**

Plaintiff is a sophisticated real estate developer who claims that he was somehow duped into taking out a mortgage in excess of $1 million from IndyMac Bank, FSB[1] on a waterfront property. Despite not making payments on his mortgage for more than 8 years, Plaintiff has

---
[1] On July 11, 2008, the Office of Thrift Supervision ("OTS") placed IndyMac Bank, FSB ("IndyMac Bank") into FDIC conservatorship, and its assets were transferred to IndyMac Federal Bank, FSB. Certain IndyMac Bank assets, including Plaintiff's loan, were subsequently acquired by One West Bank, N.A. Thus, "IndyMac Bank" is separate, distinct and unrelated entityfrom defendants "IndyMac Mortgage Services" and OneWest.

repeatedly delayed or otherwise frustrated multiple foreclosure efforts—most recently by filing for bankruptcy. This litigation is the culmination of Plaintiff's various efforts over the last several years to avoid a foreclosure sale of his home and his obligations to make payments under the terms of a mortgage loan agreement that he agreed to nearly 10 years ago.

In his Complaint, Plaintiff claims he rescinded the mortgage at issue almost a year after he closed on the loan. Notably, this is the exact same claim that he previously raised in an adversary complaint filed in his bankruptcy action, which was dismissed by this Court in October 2016.[2]

In this action, Plaintiff again asks the Court to declare that he has no further obligation under the terms of the loan documents he signed in 2007 because he sent purported rescission letters to "IndyMac Bank" in 2008. Notably, despite his purported "rescission," Plaintiff never offered to return the more than $1 million is cash that was lent to him, and appears to have no intention of returning the loaned funds or the property. Essentially, Plaintiff asks this Court to grant him the windfall of a free $1 million home. The Court should not permit this to happen.

Specifically, Plaintiff is not entitled to the equitable relief he seeks for three primary reasons.[3] First, Plaintiff's rescission claim is not timely because it is subject to a one year statute of limitations and he did not file his present Complaint until January 2017—more than *seven years after* the statute of limitations to bring that claim expired. Second, Plaintiffs' refinance transaction was exempt from relevant federal requirements under TILA[4] because the refinance through

---

[2] Plaintiff filed an unopposed motion to withdraw the reference of his adversary proceeding, which was granted by the bankruptcy court in August 2016, thereby bringing the matter before this District Court. *See* Case No. 16-cv-01049-GLR at ECF No. 37.

[3] Plaintiff also fails to assert any allegations against the named defendants in this matter. Instead, he complains of acts/omissions by "IndyMac Bank" and a title company. None of the named defendants are liable for acts/omissions by those entities because those entities are not now and have never been connected as a subsidiary, parent company, or otherwise with any defendant to this matter.

[4] The federal Truth in Lending Act ("TILA) 15 U.S.C. 1601 *et seq.*

IndyMac Bank paid off a loan that IndyMac Bank had extended to him the previous year, and therefore he cannot seek rescission under TILA. Third, other than purportedly sending two letters in 2008, Plaintiff has not complied with the federal statutory requirements to effect rescission, which includes showing that he can tender either the funds lent to him and/or the real property at issue, to the lender. Accordingly, the Court should dismiss the Complaint with prejudice.

## II.  BACKGROUND

Plaintiff is a real estate developer. *See* DE 1 (Complaint) at ¶ 11. On June 20, 2007, IndyMac Bank extended a mortgage loan to Plaintiff in the original principal amount due of $1,066,500.00 ("Loan") as evidenced by a Fixed Rate Balloon Note ("Note) dated June 20, 2007 and executed by Plaintiff that same day. *See id.* at ¶ 9; *see also* Note, attached hereto as **Exhibit 1**.[5] The Loan is secured by a deed of trust ("2007 Deed of Trust") on the real property commonly known as 1909 Orchard Point Road, Pasadena, Maryland 21122 ("Property"). *See* DE 1 at ¶ 9; *see also* Deed of Trust, attached hereto as **Exhibit 2**. The Loan was used to refinance Plaintiff's prior mortgage on the Property, which was also extended to him by IndyMac Bank. *See* DE 1 at ¶¶ 8-9; *see also* copy of recorded deed of trust dated October 30, 2006 ("2006 Deed of Trust"), attached hereto as **Exhibit 3**. Plaintiff defaulted on the Loan and the Property is in foreclosure. *See id.* at ¶¶ 4, 27.

***Shortly After Obtaining the Loan, Plaintiff Sought to Renegotiate its Terms.***

Just three months after obtaining the Loan, Plaintiff sought to modify the terms of the Loan, blaming the "economy as a whole." *See id.* at ¶ 11. According to Plaintiff, he and IndyMac Bank

---

[5] In evaluating a motion to dismiss, the court may consider "official public records, documents central to the plaintiff's claim[s], and documents sufficiently referred to in the complaint so long as the authenticity of those documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396-97 (4th Cir. 2006), citing *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). *See id.* at 396. Such documents are essentially considered to be incorporated into the Complaint. *See id.* at 396-97.

3

engaged in negotiations from October 2007 through December 2007 and Plaintiff claims IndyMac Bank "agreed to forebear from foreclosure until April 2008, provided Mr. Kelly [Plaintiff] met various conditions." *See id.* at ¶ 12. However, according to Plaintiff, even though he purportedly met those conditions, IndyMac "announced" in March 2008 that if he did not cure his default in full, it would initiate foreclosure proceedings. *See id.*

***Plaintiff Stops Making Mortgage Payments and Tells IndyMac he Wishes to Rescind his Loan.***

In response to IndyMac's refusal to modify his loan, Plaintiff claims he sent a letter to dated June 10, 2008 to inform IndyMac that he intended to exercise "his right of rescission pursuant to the Federal Truth in Lending Act." *See* DE 1 at ¶ 14. He claims he sent a second letter on July 20, 2008 reiterating his desire to rescind the Loan. *See id.* at ¶ 16. He also claims he is not liable for payments beyond July 2008. *See generally, id.*

Subsequently, after IndyMac Bank was placed in a conservatorship by the Federal Deposition Insurance Corporation ("FDIC"), the Note was purchased by OneWest from the FDIC and later sold to Deutsche Bank. *Id.* at ¶¶ 17-18. Ocwen currently services the Loan. *Id.* at ¶ 18.

***Plaintiff Contests Foreclosure and Files for Bankruptcy to Prevent Foreclosure.***

In August 2015, facing a foreclosure sale of the Property, Plaintiff filed for Chapter 7 Bankruptcy protection in the United States Bankruptcy Court for the District of Maryland, which put a hold on the foreclosure sale.[6] *See id.* at ¶ 19; *see also In re: Kelly, Patrick, J.,* Case No. 15-21120-RAG ("Bankruptcy Case"). A month later he filed an adversary proceeding in the Bankruptcy Court where, *for the first time*, he sued for equitable relief "requesting a declaratory judgment to the effect that he had rescinded the loan in 2008." *See* AP Case No. 15-00610 ("Adversary Proceeding"); *see also* DE 1 at ¶ 21.

---

[6] State Court records also show Plaintiff contested earlier efforts to foreclose dating back to at least 2009.

Following motions to dismiss the Adversary Proceeding, that matter was removed to the District Court, where it was subsequently dismissed (without prejudice) by Judge Russell for failure to state a claim for relief. *See id.*; *see also* Judge Russell's Letter Memorandum Opinion and Order dated October 31, 2016, attached as **Exhibit 4**. The Bankruptcy Trustee abandoned the Property in the Bankruptcy Case was also closed on September 16, 2016. *See* DE 1 at ¶23.

***Plaintiff Sues Again to Attempt to Enforce a Rescission of his Loan.***

More than eight years after initially informing IndyMac Bank that he intended to rescind the Loan, Plaintiff now brings this action. *See generally, id.* Unlike in 2008 when Plaintiff claimed he wished to rescind the Loan because "IndyMac Bank refused to engage in any further [loan modification] discussions…", Plaintiff now claims that he actually meant to exercise his right to rescind because a finance charge on his TILA disclosures was purportedly "understated by more than $ 100.00" and because his "APR" on those disclosures was purportedly understated by approximately "1/8 of 1 percent." *Compare id.* at ¶ 14 with *id.* at ¶¶ 34-37. Even if true, an "understatement" of *1/8th of one percent,* amounts to a negligible discrepancy of one-hundred twenty-five *thousand<u>ths</u>* (0.00125).[7]

Based on these alleged discrepancies Plaintiff now claims that he is entitled to "rescind the loan transaction for a period of up to three years after closing," citing to "15 USC 1635(1)[8], 12 CFR § 226.23(a)(3)." *See id.* at ¶ 38. And, according to Plaintiff, by sending two letters to IndyMac in July 2008, he "rescinded the loan transaction" and therefore he is entitled to keep the Property, does not have to return the Loan proceeds, and the Deed of Trust and Note are somehow

---

[7] 1/8=0.125; 1%= 0.01; 0.125 x 0.01=0.0000125.

[8] Although Plaintiff cites to "1635(<u>1</u>)" that subsection to 15 U.S.C. § 1635 does not exist. However, it appears Plaintiff may mean to refer to § 1635(<u>f</u>), which corresponds with i12 C.F.R. § 226.23(a)(3).

5

unenforceable. *See id.* at p. 10.

## III. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must state a 'plausible claim for relief.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 citing *Twombly,* 550 U.S. at 556. A pleading that offers only labels, conclusions, or formulaic recitations of the elements of a cause of action does not state a plausible cause of action. *Iqbal*, 556 U.S. at 678.

Moreover, the "determination whether a complaint adequately states a plausible claim is a 'context-specific task,' in which the factual allegations of the complaint must be examined to assess whether they are sufficient 'to raise a right to relief above the speculative level.'" *Walters*, 684 F.3d at 439, citing *Twombly*, 550 U.S. at 555. Although "a plaintiff need not forecast evidence sufficient to prove the elements of the claim," the plaintiff still "must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (internal quotations omitted). And, as *Twombly* suggests, "something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people' . . . So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.*

## IV. ARGUMENT

Plaintiff's single claim for equitable relief—a court order declaring that he rescinded the

Loan and that the Note and Deed of Trust are unenforceable—should be dismissed because his claims for rescission under TILA are time-barred. In addition, he is not entitled to rescission under TILA because his refinance transaction is exempt from TILA's rescission provisions, and because he has not pleaded that he is prepared to tender the loan proceeds and/or property to Defendants. Accordingly, as explained more fully below, his Complaint should be dismissed with prejudice.

### A. Plaintiff's Claim is Time-Barred.

#### 1. Providing Notice of Rescission is Insufficient to Fully Rescind a Mortgage.

TILA provides borrowers with two types of rescission for certain loans: a conditional right to rescission and an unconditional right to rescission. Generally, a borrower has an unconditional right to rescind a mortgage loan for three days following closing. *See* 15 U.S.C. § 1635(a); *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015). Once the time limit for exercising the "unconditional right to rescind" expires, a borrower "may rescind only if the lender failed to satisfy the Act's disclosure requirements." *See Jesinoski* 135 S. Ct. at 792 citing 15 U.S.C. 1635(f); *see also* 12 C.F.R. § 226.23(a)(3). This conditional right to rescind based upon insufficient "material disclosures" *must* be exercised within three years of the loan's closing—it "does not last forever." *See Jesinoski*, 135 S. Ct. at 792. [9]

Here, Plaintiff claims he sent two letters providing notice of rescission in June and July of 2008 and that "IndyMac Bank" (not any Defendant, here) did not respond to those letters. *See* DE 1 at ¶¶ 14, 16. Thus, under TILA and as explained in *Jesinoski,* as Plaintiff sent these letters months after the unconditional right to rescind expired, Plaintiff could have only attempted to

---

[9] The term "material disclosures" is defined under Regulation Z as being limited to "the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and limitations referred to in §§ 226.32(c) and (d) and 226.35(b)(2)." 12 C.F.R. § 226.23, n.48. Notably, the "1003" Residential Loan Application is not a material disclosure.

exercise a *conditional* right to rescission based on purportedly insufficient TILA disclosures. However, according to the Complaint, that is not what Plaintiff did.

In the Complaint, Plaintiff claims that he "informed IndyMac Bank…by letter dated June 10, 2008, that he was exercising his right of rescission pursuant to the Federal Truth in Lending Act" apparently because "IndyMac Bank refused to engage in any further [settlement or loan modification] discussions…." *See* DE 1 at ¶ 14. He also claims to have sent a similar letter on July 20, 2008[10], but never alleges that he informed IndyMac Bank (in either letter) that he was exercising his *conditional right to rescission* based on *insufficient disclosures*.[11] Nonetheless, he claims those notices alone are sufficient to rescind the Loan, void the Deed of Trust and Note, and to relieve him of any further obligations to make payments on the Loan. *See generally, id.*

However, even assuming *arguendo* that the letters provided sufficient notice of a *conditional right to rescission* –which they did not—the mere act of giving notice of rescission

---

[10] These letters were not directed at the named Defendants, here. As noted, *supra*, "IndyMac Bank" has never been affiliated with "IndyMac Mortgage Services" (despite the similar name) or any other defendant. Thus, none of these Defendants could possibly be liable for IndyMac Bank's acts omissions.

[11] Plaintiff raises the issues of purportedly insufficient disclosures for the first time in this Complaint where he claims " National Capital Title and IndyMac Bank violated TILA" and that he "was entitled to rescind the loan transaction within three years of closing." *See* DE 1 at ¶ 32. Yet, even if "National Capital Title" or "IndyMac Bank" somehow violated TILA, the Defendants here are not liable for those acts/omissions because, as explained *supra*, the Defendants are not connected to either of those entities and never have been. In addition, the supposed discrepancies in Plaintiffs' TILA disclosures which, according to Plaintiff, include an overstated finance charge of "more than $100.00" in violation of 15 U.S.C. § 1605(f)(2)(A) and "an understatement of APR in excess of 1/8 of 1percent [sic]" in violation of 15 U.S.C. § 1606(c), are not TILA violations at all. *See* DE 1 at ¶¶ 33-36. First, to be entitled to rescind a residential mortgage loan under § 1635, the *disclosed finance charge* must exceed "one-half of one percent of the total amount of the credit extended," not a mere $100 as Plaintiff claims, and based on Plaintiff's own pleading the disclosures here fall within that "tolerance for accuracy." 15 U.S.C. § 1605(f)(2)(A); *see also* 12 C.F.R. § 226.23(g). Second, because the *disclosed finance charge* complies with TILA and Regulation Z, the annual percentage rate is also within the "tolerance" for accuracy as it applies here regarding the right to rescind—even if it exceeds "1/8 of 1 percent" as Plaintiff claims. *See* 12 C.F.R. § 226.22(a)(4)(ii)(B). In addition, while Plaintiff also claims he never received a form 1003 in Paragraph 37 of the Complaint, whether he received one is irrelevant because the form 1003 is a not a "material disclosure" under TILA, as defined by Regulation Z. *See* 12 C.F.R. § 226.23, n.48. Thus, Plaintiff is not entitled to an extended three year conditional right to rescind based upon insufficient disclosures.

8

does not in and of itself unwind the transaction and does not automatically render a loan or mortgage instruments void. *See Gilbert v. Residential Funding LLC*, 678 F.3d 271, 277 (4th Cir. 2012); *In re Pinson,* 538 B.R. 443, 449 (S.D. Wv. Bankr. 2016) (distinguishing the requirement to provide notice of rescission discussed in *Jesinoski* with the procedures required to fully rescind); *see also, In re Brown,* 538 B.R. 714, 718-719 (E.D.Va. Bankr. 2015). Rather, if a lender fails to respond to a notice to rescind, such that the parties might complete the rescission amongst themselves, **"**the borrower **must file a lawsuit** so that the court may **enforce the right to rescind**." *See Gilbert*, 678 F.3d at 277 (Emphasis added) citing *Am. Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).

That lawsuit must be filed within the applicable statute of limitations.

**2.  Plaintiff Did Not File a Timely Lawsuit to Enforce His Right to Rescind.**

TILA violations have a one-year statute of limitations – i.e., if a lender fails to rescind the loan and the borrower sues because a lender fails to rescind a loan, that suit must be brought within one year of the alleged violation. *See* 15 U.S.C. § 1640(e); *See, e.g., Jackson v. Bank of Am., N.A.*, No. 7:14-CV-82 (HL), 2015 WL 5684121, at *3 (M.D. Ga. Sept. 28, 2015); *Wade v. Household Fin. Corp.*, No. 1-15-CV-210 RP, 2015 WL 3540421, at *5 (W.D. Tex. June 4, 2015); *LaGrant v. U.S. Bank Nat. Ass'n*, No. 3:14-CV-809-HEH, 2015 WL 1208967, at *7 (E.D. Va. Mar. 16, 2015). The one-year statute of limitations provided in § 1640(e) applies to actions where a creditor fails to comply with "any requirement under section 1635 of this title" and specifically contemplates actions to either "enforce liability" for TILA violations or a "right of rescission under section 1635…." *See* 15 U.S.C. 1635 §§ 1640(a) and 1640(a)(1)(B)(3).

The one-year limitations period for Section 1635(b) claims runs from twenty days after a plaintiff gives notice of the rescission. *Frazile v. EMC Mortgage Corp.*, 382 F. App'x 833, 839

9

(11th Cir. 2011). For example, in *Jackson*, the borrower filed suit more than one year and twenty days after he sent his notice of rescission. *See, e.g.,* 2015 WL 5684121 at *3. The Court found that the TILA claim was time-barred. *See id.*

Here, Plaintiff claims he sent a copy of the Notice of Rescission via first class mail on June 10, 2008 and July 20, 2008, and that IndyMac Bank never responded. *See* DE ¶¶ 14, 16. Therefore, he had one year plus 20 days to file suit for a TILA violation *against IndyMac Bank* and to effect a rescission—which is August 9, 2009. Yet, Plaintiff's Complaint was not filed until January 2017 – **more than nine years after** the Loan closed and **more than seven years after** the statute of limitations already expired—and does not even name IndyMac Bank as a defendant. As such, Plaintiff's claims are time-barred. Accordingly, Plaintiff's Complaint for declaratory relief must be dismissed in its entirety.[12]

### B. Plaintiff's Refinance Transaction is Exempt From TILA's Rescission Provisions

Even assuming *arguendo* that Plaintiff's TILA claim is not time barred, his refinance transaction is not rescindable under TILA. The disclosure requirements for a borrower's conditional right to rescind and the conditional right to rescind itself do not apply to certain refinance transactions. Pursuant to 15 § U.S.C. 1635(e)(2), a "transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an **existing extension of credit by the same creditor** secured by an interest in the same property." (Emphasis added). Put another way, generally the TILA "right to rescind does not apply to…[a] refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling." 12 C.F.R. §

---

[12] This Court cannot grant equitable relief if doing so would be a moot point. *See, e.g., Fedewa v. J.P. Morgan Chase Bank, Nat. Ass'n*, 921 F. Supp. 2d 504, 509 (E.D. Va. 2013)

226.23(f)(2).

This exemption is based on "the belief that 'although general consumer borrowers need a cooling off period to reconsider encumbering title to their homes, a borrower who refinances has already had time to rethink with respect to the old money.'" *In re Holland*, No. 10-05404-8-SWH, Slip Copy 2011 WL 5902778 at *4 (E.D.N.C. Bankr. May 19, 2011) quoting *In re Porter*, 961 F.2d 1066, 1074 (3d Cir. 1992). Further, as explained in Regulation Z, the only exception to this general exemption under 15 U.S.C. 1635(e) is the extent to which "the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation." 12 C.F.R. § 226.23(f)(2). Thus, pursuant to TILA and Regulation Z, when a borrower refinances a prior mortgage with the *same lender* that extended the prior mortgage to him, "a borrower may rescind the 'new money' portion…but not the 'old money' portion." *In re Porter*, 961 F.2d at 1074.

Here, as demonstrated by the recorded deeds of trust (and Plaintiff's own allegations), Plaintiff refinanced his 2006 mortgage from IndyMac Bank, with another "extension of credit" from IndyMac Bank in June 2007. *See* Ex. 2 (2007 Deed of Trust) and Ex. 3 (2006 Deed of Trust). Thus Plaintiff's 2007 refinance of the 2006 mortgage is exempt from TILA's rescission provisions.[13] Accordingly, he cannot possibly assert a claim for rescission under TILA and his Complaint should be dismissed with prejudice.

### C. Plaintiff is Not Entitled to Rescission because he has Not Complied with TILA's Rescission Requirements.

In addition to being inapplicable under TILA and barred by the statute of limitations,

---

[13] At most Plaintiff might have been able to rescind a small portion of the "new money" from the 2007 Loan. However, he has not demonstrated to what extent, if any, the 2007 Loan exceeded the unpaid principal balance from the 2006 mortgage. In any case, such a claim is not timely under 15 U.S.C. § 1640(e). Accordingly, Plaintiff cannot possibly state a claim for rescission.

Plaintiff's rescission claim also fails because he has failed to comply with TILA's rescission requirements. Under long standing precedent in this circuit, "there is a difference between giving notice of rescission and determining whether the loan was properly rescinded." *See In re Brown*, 538 B.R. at 718 citing *Gilbert* 678 F.3d 271. As the Fourth Circuit recently explained, one "must not conflate the issue of whether a borrower has exercised her right to rescind with the issue of whether the rescission has, in fact, been completed and the contract voided…." *Gilbert,* 678 F.3d at 277. Thus, while a borrower need not give notice of rescission *and also file suit* within three years of closing, the notice itself does not equal rescission. *See id.*

Rather, to state an equitable claim for rescission, a borrower must plead his ability to tender loan proceeds and/or the property at issue. *See* 15 U.S.C. § 1635(b); *see also Shelton*, 486 F.3d at 820-21. This is because the "law of the Fourth Circuit is that after the borrower gives notice of rescission, the **borrower must have the ability to tender the rescission amount within a reasonable time**." *In re Brown*, 538 B.R. 714 at 719 (emphasis added). Indeed, "[t]he equitable goal of rescission under…[TILA] is to restore the parties to the 'status quo ante.'" *Shelton*, 486 F.3d 815, 820. "To achieve this, the **borrower** seeking rescission **must be able to tender the borrowed funds back to the lender**." *In re Brown*, 538 B.R. 714 at 719 (Emphasis added). Specifically, following timely notice, complete rescission under § 1635(b) of the TILA entails a three step process:

> First, the security interest in the home is voided and the borrower is not liable for any further payments. Second, the creditor has 20 days to refund any payments made in connection with the loan. Third, the borrower must tender the proceeds of the loan. **Rescission should not be granted where it is clear that the borrower cannot or will not tender the borrowed funds to the creditor**…That result would be inequitable and does not achieve the purposes of the statute which is to put the parties back in the position they were in prior to the loan.

*Id.* (Emphasis added) citing 15 U.S.C. § 1635(b); *Shelton*, 486, F.3d at 819-20; *see also* 12 C.F.R. 226.23 Where a borrower cannot tender the rescission payment within a reasonable time, the loan will not be unwound. *See In re Brown*, 538 B.R. at 719.

For example, in *Shelton*, the borrowers asserted that they were entitled to rescind their loan and keep their house with no further obligations. *See Shelton,* 486 F.3d at 820. The Fourth Circuit rejected that argument and explained that the borrowers' notion that they could "simply walk away with a windfall…not only offends traditional notions of equity, but misinterprets the procedural requirements of § 1635(b)." *See id.* at 821.

Here, as in *Shelton,* rather than plead that he is ready and willing to return the loan proceeds or turn over the Property, Plaintiff asserts he is entitled to a windfall. He claims he has a "complete defense" to foreclosure and that the Deed of Trust and Note have somehow been invalidated by his 2008 notices of rescission. However, as the Fourth Circuit has repeatedly held, Plaintiff is incorrect – he is not entitled to rescission where he has failed to tender the Loan proceeds, and therefore his TILA rescission claim should be denied. Accordingly, he is not entitled to rescission, has not stated a claim for relief, and therefore his Complaint should be dismissed with prejudice.

## V. CONCLUSION

Plaintiff's claims are time barred by the statute of limitations. Plaintiff is also not entitled to the equitable relief he seeks because his refinance transaction is exempt from TILA's rescission provisions and because he refuses to tender either the funds or Property at issue.

WHEREFORE the Court should dismiss his Complaint with prejudice, award Defendants their fees and costs associated with defending this frivolous action, and grant such other relief as it deems just and appropriate.

Dated: January 31, 2017                              Respectfully submitted,

/s/ Andrew M. Williamson
Andrew M. Williamson (Fed. Bar No. 18721)
BLANK ROME LLP
1825 Eye Street
Washington, DC 20006
Phone: (202) 420-2200
Fax: (202) 379-9314
Email: AWilliamson@BlankRome.com
*Counsel for Counsel for Defendants: IndyMac, OneWest, Ocwen, and Deutsche Bank*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 31st day of January 2017 a true and correct copy of the foregoing document and any attachments was served electronically via the Court's CM/ECF system on all counsel of record.


Dated:  January 31, 2017            /s/ Andrew M. Williamson
                                                 Andrew M. Williamson, Esq.